## B. W. MATLACK V. GEORGE SHAFFER *et al.*

1. CONVEYANCE, *Fraudulently Obtained—Cancellation.* Where a party living in a county in which a tract of land is situate falsely represents to the owner, who lives in a distant state, and is old and feeble in body and mind, and who has no knowledge of the location, condition or value of the land, that he has a tax title to the same, which is so old as to be cured of any defects by the statute of limitations, and that his rights under that title are paramount, and where he further states that, unless the owner receives the nominal sum offered and executes a conveyance to him, that he will never get anything for the land, and the owner, believing this and other like representations to be true, and, relying upon them, accepts the amount offered, which is greatly inadequate, and executes the conveyance, he is entitled to relief, where it is seasonably asked for, and, upon restoration of the consideration paid to him, may obtain a cancellation of the conveyance so fraudulently obtained.

2. DEED, *Set Aside.* Where the representations respecting a tax title were made with the intent to deceive, and the grantor, ignorant of their falsity, believed and acted upon them in making the conveyance, he is entitled to have it canceled and set aside for fraud, although he might have discovered the fraud by a search of the records in the distant state where the land was situate.

*Error from Sumner District Court.*

ACTION by *Shaffer* and wife against *Matlack,* to set aside a conveyance obtained from plaintiffs by fraudulent representations. June 18, 1889, judgment for plaintiffs. Defendant comes to this court. The opinion states the facts.

*J. F. McMullen,* and *L. H. Webb,* for plaintiff in error:

It seems to us that this case hinges upon the matter of Matlack's tax title, because that is the only representation which the Shaffers prove. And that representation was true. Matlack said he had a tax title seven years old. He did have a tax title which was at that time (1887) almost 10 years old. That is to say, O. F. Boyle had received tax deeds, and had in writing agreed to share his title with Matlack and Hill, as already shown from the record. That certainly is enough

to justify his statement that he had a tax title. Any statement which Matlack made with regard to the validity of the tax deeds, or as to the result of a future action to be brought concerning them, would, in the nature of things, be only an opinion as to matters of law, and could not support an allegation of fraudulent misrepresentation. See 2 Pom. Eq. Jur., §§ 877, 892, 903; *Russell v. Hallett,* 23 Kas. 276; *Bowman v. Page,* 11 Wis. 301.

A court of equity should not grant the relief asked by defendants in error, unless the proof shows beyond a reasonable doubt that the alleged fraudulent misrepresentations were made and acted upon. 2 Pom. Eq. Jur., § 859. That is not shown in this case.

*Peckham & Peckham,* for defendants in error:

The claim of counsel for plaintiff in error that misrepresentations as to matters of law are, in the nature of things, only matter of opinion as to the result of a future action, and cannot be used as a basis of relief upon the ground of false and fraudulent misrepresentation, is not a fair statement of the law, as applied to the facts in this case.

" It is not universally true that a misrepresentation of the law is not binding upon the party who made it. . . . . Where one who has had superior means of information professes a knowledge of the law, and thereby obtains an unconscionable advantage of another, who is ignorant and has not been in a situation to become informed, the injured party is entitled to relief as well as if the misrepresentation had been concerning matter of fact." See Bigelow, Law of Fraud, p. 488, and cases there cited.

There is no presumption that a resident of the state of Maryland has any knowledge of the statutory laws, the tax laws and the limitation laws of the state of Kansas. These are matters of existing fact as well as matters of law; and the plaintiffs in this case, old, feeble, and inexperienced in business, as the evidence shows them to be, had a right to rely upon representations made to them by the defendant, a

14—51 KAS.

resident of Kansas, whose opportunities for knowledge were superior to theirs. They had a right to assume that statements made by him of such matters of law, by way of inducement to them to convey, and as information upon which they were to base a judgment as to the value of their title, were true, and to hold him responsible if they were untrue, more especially if such representations were not only false but fraudulent, and made with intent to deceive and wrong.

The opinion of the court was delivered by

JOHNSTON, J.: On January 19, 1887, B. W. Matlack sought and obtained a conveyance of 200 acres of real estate in Cowley county from George Shaffer and his wife, Elizabeth A. Shaffer. This action was brought by the Shaffers to cancel and set aside the deed of conveyance, upon the ground that it had been obtained by misrepresentation and fraud. The Shaffers, who resided in Baltimore, and were over 70 years of age, had never seen the land, and were not acquainted with its location and value. George Shaffer had inherited the land or an interest in the same from his nephew, who died in 1873, unmarried and without issue. Matlack lived in the vicinity of the land, and was acquainted with its conditions and value. Learning that the Shaffers had an interest in the land, he wrote to a gentleman in Maryland, on December 21, 1886, stating that he had recently bought a piece of land, and, in order to make the title absolutely good, he desired to obtain a quitclaim deed from the Shaffers. He told his agent to whom he wrote that their title did not amount to much, but he would be willing to pay them $25 each, and would give the agent $100 to perform the work. The agent replied that the Shaffers lived in Baltimore, and that if he would send him $10 to pay expenses he would go to that place and look them up. The agent visited the Shaffers, and proposed to give them $50 for a conveyance of the land, telling them that Matlack had a tax title to the same. The Shaffers declined to accept the offer, and their declination was reported to Matlack, who sent another letter of advice to his agent,

directing him to tell the Shaffers that he held a title under a
tax deed which was seven years old, and if there were any
technical errors in the same they had been cured by the five-
year statute of limitations.    He directed the agent to offer
them $100, and if they would not accept that, to give them
$150 or $200; and if they refused to take these sums, to state
to them that he would commence an action against them to quiet
title, in which event they would never get anything, and that
these offers were made to save the trouble of a lawsuit, and
to enable him to dispose of the land immediately.    He in-
closed a quitclaim deed partially filled out, advising him that
he "must use a little stratagem in this, but do not miss the
mark."    In accordance with this advice, the agent again vis-
ited the Shaffers, and after considerable persuasion and pres-
sure succeeded in getting them to sign the conveyance.    The
consideration for the same was $200, while the land is con-
ceded to be worth $6,000 or over, and the interest of George
Shaffer therein is worth at least $1,500.    At that time Mat-
lack had no tax title whatever to the land, nor did he hold
any tax lien on the same, neither had he any possession of the
land then or at any other time.    The possession and occu-
pancy of the same were in another, who claimed title by a
deed purporting to be from the sole heirs of the former
owner.

The court below found that the execution of the convey-
ance had been procured by false and fraudulent representa-
tions, upon which the grantors relied, and but for which it
would not have been executed.    We think the testimony
justifies the finding, and that the judgment should stand.
George Shaffer, by reason of age and illness, was feeble in
mind and body at the time the conveyance was obtained, and
it is clear that he was deceived and overreached through the
false representations made to him.    He knew nothing as to
the tax liens or claims upon the land, nor was he acquainted
with the tax laws of Kansas.    Matlack, through his agent,
represented to him that he had a tax title which was good,
and if there were any defects or technical errors therein they

had been cured by the lapse of time.   He was also told that it would cost him a large sum of money to send an attorney or other person out to investigate the matter, and that an action would be begun against him; and the agent told him that from what he knew the tax title was good, and that if he did not accept the $200 he would never get anything.   This agent in his testimony states that Shaffer would not have signed the deed if it had not been for these representations.   More than that, he was told and led to believe that the description in the deed covered only 160 acres of the land, and, attention being called to the extent of the land, the agent confirmed that belief.   Shaffer specially objected to signing the deed if it contained more than 160 acres.   He then employed Matlack's agent to look up and care for his title and interest in the remaining 40 acres, which he supposed were not included in the instrument of conveyance.   It thus appears that he was led to believe that Matlack had a good title to the land, and that, by possession and the running of the statute of limitations, his own interest was of little or no value. But for these misrepresentations, he would not have executed the conveyance for any such trifling consideration.   Some of the misrepresentations made by Matlack were of fact, and some of them were of fact based on law.   They were untrue, and calculated to mislead the Shaffers, who did not have the knowledge or opportunity to know the truth of the representations made.   While they were ignorant, Matlack had superior means of information, and by the misrepresentations obtained an undue advantage, from which the Shaffers were entitled to relief.

It is claimed that Matlack's statement with reference to the tax deed was not wholly untrue.   It appears that the land had been sold for taxes, and it was claimed that the person who had obtained a tax deed had agreed to share his title with Matlack.   The testimony with respect to this is not satisfactory, and is of little value as a support for Matlack's claim.   It appeared that the tax sale upon which the tax deed was issued was only for one-fourth of the 160-acre tract, and

for 19 acres of the 40-acre tract, and Matlack claimed that the tax title covered the whole of both tracts.

It is also said that the Shaffers had no right to rely upon Matlack's statement that he had a tax deed, because it was a matter of public record, of which they were bound to take notice. The facts with reference to the title and Matlack's rights to the land were not equally within the knowledge of both parties, or the means of acquiring knowledge possessed by both. The Shaffers were nonresidents, and more than a thousand miles from the land and the public records pertaining to it, while Matlack was acquainted with the land and the records, and also knew of the ignorance of the Shaffers respecting the title. In the absence of any personal knowledge, the Shaffers were, under all the circumstances, justified in relying on Matlack's representations. They had no immediate means of learning the facts by an examination of the records, and as Matlack knew the statements to be untrue, and it appears that they have been relied and acted upon as true by the Shaffers, they are entitled to recover, although they might have discovered the fraud by searching the records. (*Claggett v. Crall,* 12 Kas. 393; *McKee v. Eaton,* 26 id. 226; *Curtis v. Stilson,* 38 id. 302; *David v. Park,* 103 Mass. 501; *Safford v. Grout,* 120 id. 20.)

The Shaffers tendered a return of the $200 paid to them when the deed was executed, and, upon the whole record, we think the district court made no mistake in its conclusion that the deed should be canceled and set aside.

Its judgment will be affirmed.

All the Justices concurring.