# CHARLESTON.

## ANGRIST v. BURK.

Submitted September 28, 1915.   Decided November 16, 1915.

1.  TRIAL—*Refusal of Instruction—Evidence.*
        Though it is necessary, when an instruction embodying an hypothesis dependent upon the finding of a certain fact by the jury, has

been given for one party, to give another for the opposite party, if requested, stating the converse of the legal proposition, there being evidence tending to sustain both, the rule imposes no duty to repeat it in different forms.   (p. 195).

2.   SAME—*Refusal of Instruction—Discretion.*
   The trial court has discretion to refuse an instruction so drawn that it may mislead the jury by an implication unfavorable to one of the parties.   (p. 196).

3.   APPEAL AND ERROR—*Presentation for Review—Rulings on Evidence.*
   To obtain the benefit of errors in rulings upon evidence admitted or rejected, the complaining party must specify them.   The court will not search the transcript of the evidence for them.  (p. 196).

4.   FRAUD—*Reliance on False Representations—Question for Jury—Independent Investigation.*
   Whether an independent investigation by one of the parties to negotiations for a contract of sale of real estate, as to the subject matter of a false representation made by the other, is conclusive evidence of non-reliance upon the misrepresentation, in the closing of the contract, depends upon the nature of the fact in question and the attendant circumstances.   (p. 196).

5.   SAME.
   If, in such a case, the parties did not stand upon an equal footing respecting opportunity for knowledge of the truth, and the conduct of the falsifier, in the closing of the contract, was misleading, the question of reliance upon the statement is one for the jury.   (p. 196).

Error to Circuit Court, Mercer County.

Action by Sarah Angrist against W. C. Burk.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*John R. Dillard* and *French & Easley,* for plaintiff in error.

*Russell S. Ritz* and *Sanders, Crockett & Kee,* for defendant in error.

POFFENBARGER, PRESIDENT:

On this writ of error to a judgment on an appeal in an action begun in a justices's court and based upon allegations of fraud and deceit in the sale of a certain house and lot, respecting a prospective incumbrance thereon for street paving, the plaintiff in error assigns errors in the rulings of the court upon instructions and evidence.

77 W. Va.

The alleged false and fraudulent representation is said to have been made at the inception of the negotiations for the purchase of the property and about three weeks before they eventuated in the final and complete contract. There were two contracts, the first one of which was abrogated because of its failure to provide for interest on the deferred installments of purchase money. In that one, the price agreed upon was $4,700.00 and, in the other, dated May 28, 1912, $4,500.00.

Located at the intersection of Princeton Avenue and Giles Streets in the City of Bluefield, the lot abutted two streets. According to the evidence adduced by the plaintiff, both streets had been paved in front of the lot at the time of the beginning of the negotiations, but the paving of the latter was new and had not progressed far beyond the lot. The plaintiff, her husband and her daughter all say that, while on the lot, attended by the defendant, and contemplating purchase thereof, an inquiry was propounded to him as to whether all the paving charges had been paid and he replied that they had. Plaintiff says his reply was "Everything is paid. Before you sign the contract, I will give you a clear title and we will have no trouble whatever." The daughter says he was asked whether the street that had just been completed had been paid for, and he replied that it had. The husband says he told them the paving of the streets and sidewalks had been paid for. Witness Phelps says the defendant told him he was going to sell to Angrist "pig in the bag." By consent of parties, the city engineer's statement that the paving of Giles Street was commenced April 18, 1912, and had progressed about 600 lineal feet by June 7, 1912, was admitted. The assessment for that paving was made July 22, 1912, nearly two months after the conveyance. The defendant explicitly denies the alleged inquiry as to whether he had paid for the paving on Giles Street and his having stated he had paid it, but does not deny the statement imputed to him by Phelps. He admits he was present when the Angrists inspected the property and that he had several conversations with them.

On the occasion of the execution of the deed, the defendant produced receipts for the paving of Princeton Avenue and the sidewalk on that street, and an inquiry of the city officers

disclosed the existence of an unpaid assessment of $176.14, for the paving of the sidewalk on Giles Street. To cover this charge, the defendant surrendered five of the purchase money notes, in consideration of the plaintiff's assumption of that lien, and, on that basis, the transaction was closed. The antecedent inquiry made of the city Auditor and Treasurer did not disclose any assessment for the paving of Giles Street, because the assessments for that work had not then been made. As subsequently made against the property in the name of Angrist, the purchaser, July 22, 1912, it amounted to $209.59 and she was compelled to pay it.

As, on the settlement, no receipt for the street paving or Macadam work on Giles Street was produced, and all other paving assessments affecting the property were carefully hunted up and provided for, and it must have been apparent from the report of the city officers that no assessment for the paving of Giles Street had been made, there was room for a difference of opinion as to whether the plaintiff relied upon the statement of the defendant, if he made the representation imputed to him. Whether she did or not was a crucial question in the case.

The instruction given at the instance of the plaintiff, told the jury they should find for her, if they believed the representation had been made by the defendant and relied upon by her in the purchase. One of the instructions given for the defendant advised them that, before they could find for her, they must believe it had been made and that she did not seek outside information as to the truth of the same but relied solely upon it. The refusal of another asked for, which if given, would have told them they could not find for her, but should find for the defendant, if they believed she did not rely upon it but made an investigation for herself, as to the truth of the same. In substance and effect, this instruction was the same as the one last above referred to. To have given both would have been useless repetition in which the court was not bound to indulge. While it is necessary, when an instruction embodying an hypothesis, dependent upon the finding of a certain fact by the jury, has been given for one party, to give another for the opposite party, if requested, stating the converse of the legal proposition, there being evidence

77 W. Va.

tending to sustain both, *Stanton* v. *Parkersburg,* 66 W. Va. 393, the rule imposes no duty to repeat it in different forms.

Defendant's instruction No. 5, which would have told the jury the assessment in question was not included in or covered by the warranty in the deed, was not aptly drawn for the accomplishment of its purpose, namely, to advise the jury that the action was not founded upon the warranty, but solely upon the alleged fraudulent 'representatiion. As framed, it imported, by implication, lack of right to recover because the warranty did not include it. Seeing this, the court had discretionary power to ˙refuse it on account of its form. It should have been drawn so as to tell the jury they could consider the deed only for the purpose of showing the plaintiff's purchase of the property, as an act charged by her to have been induced by the alleged fraudulent representation, and that the warranty clause therein did not bind the defendant to pay the assessent.

For lack of specification, the assignments of error respecting the admission and rejection of evidence are fatally defective. The court cannot be required to explore the transcript of the evidence for errors in rulings of that kind.

Right of the jury to resolve the conflict of evidence as to whether the representation complained of was made, is clear. It is oral and uninfluenced by any conceded or clearly established fact. Their right to find she relied upon it to her detriment and injury in the purchase is not so apparent. Before closing the deal, she made the defendant produce and turn over to her his receipts for the assessments he had paid and make provision for one he had not paid. At that time, .the assessment in question had not been made, but the paving had been done. If it had been made. her investigation would have disclosed it. Being the owner of the property, the defendant must have known it had not been made. She was under no duty to know it, and her ignorance of this fact may have misled her. If Burk made the representation alleged and saw the misapprehension under which she was laboring and remained silent as to the true situation, his conduct was a misleading circumstance in accord with the false statement. Her own investigation was a circumstance tending to show she did not rely upon his representation and would have

justified a verdict for the defendant.  *Ludington* v. *Renick,*
7 W. Va. 273; *Slaughter's Adm's.* v. *Gerson,* 13 Wall. (U. S.),
379; *Farrar* v. *Churchill,* 135 U. S. 609; *Farnsworth* v. *Duff-
ner,* 142 U. S. 43.  But this circumstance is not conclusively
and absolutely inconsistent with reliance upon the statement.
Without the wisdom of a philosopher, one may easily perceive
that she may have relied upon both.  Whether she did or not
is a matter of inference, proper for jury determination.
*Jordan* v. *Walker,* (Va.), 78 S. E. 643; *Thomas* v. *Grice,*
(Del.), 41 Atl. 883.  The cases relied upon, as showing the
circumstance to be conclusive, are equity cases in which its
effect was a question for the court.  What would be sufficient
to satisfy the court, in a given case, might not convince a
jury.  Courts often observe this divergence of opinion, but
have to acquiesce in the verdict.

To say the verdict is against the decided weight and pre-
ponderance of the evidence would merely make this matter
of inference conclusive.  If the court could do that in one
case, it could do it in all and, in consequence thereof, the
province of the jury would be much narrowed and restricted.
The test of sufficiency of the evidence, on a motion to set aside
a verdict, is the same as on a demurrer to the evidence, and,
under that rule, all legitimate inferences are conceded to the
demurree.  The non-payment of the assessment, or the de-
mand constituting the basis thereof, was not an open and
apparent fact, as to knowledge of which the parties were on
an equal footing.  The defendant's position was superior.  In
the opinion of the jury, he made the false statement alleged,
and, knowing it to be false, subsequently remained silent,
when he knew the plaintiff was closing the deal in ignorance
of the falsehood, after an effort to secure all the rights for
which she had contracted.  Nothing is perceived in the cir-
cumstances, that would justify disturbance of the verdict.

The judgment will be affirmed.

*Affirmed.*