[L. A. No. 17902.   In Bank.   Mar. 5, 1942.]

SECURITY-FIRST NATIONAL BANK OF LOS AN-
GELES (a National Banking Association), Appellant v.
ANNA L. EARP et al., Respondents.

Thorpe & Bridges and Roane Thorpe for Appellant.

Vance Booker and P. N. Girard for Respondents.

TRAYNOR, J.—Defendants, Mr. and Mrs. D. M. Washburn, were indebted to plaintiff, the Security First National Bank of Los Angeles, in the amount of $3,000. The debt was secured by a mortgage on certain real property owned by defendants. In 1933 defendants, together with certain other persons, executed a joint and several promissory note for $32,750, payable to plaintiff with interest at seven per cent. This note was secured by a deed of trust on other real property. In 1939 this trust deed was foreclosed and the proceeds of the sale were applied to the debt, leaving an unpaid balance of $7,850.70.

In 1935 the $3000 mortgage, outstanding for about 10 years, fell due. In response to a communication from plaintiff, Washburn went to the bank to arrange for a renewal. According to Washburn's testimony he had the following conversation with an employee of the bank: "He wanted to know if I could make any payment at that time on the principal. I told him no, I didn't see how I could, I said, 'Couldn't you extend it, this mortgage for another year?' and he said, 'Well, no, I don't know as we can. Some payment should be made on the principal.' I said, 'Well, I am not able to do that right at this time, but I know another bank, and also a building and loan company, that might, that I would like to see, to see if they would extend or would take this property for $3000 straight loan, or lend $3000 straight loan on it.' And this man I was

talking to then said, 'Well, let me see a little bit further.' And he went away from this desk and away from this counter, and I don't know where he went, but he came back in a few minutes—asked me to wait a few minutes—and said that if I and Mrs. Washburn would come in tomorrow, that they would extend this mortgage for another year, which we did, and what I signed the following day." Question: "You came in the next day?" Answer: "Yes. And what I signed the following day with Mrs. Washburn I assumed it was the extension of the mortgage for a year, which in so many words I had been told it was."

Defendants thus signed a renewal note for $3,000 at 7% interest secured by what they believed to be the same mortgage extended for another year. Actually, however, the new encumbrance was a trust deed and contained a provision, not present in the previous mortgage, that it was given to secure the payment of all obligations, present and future, which were then owing or might thereafter become owing from defendants to plaintiff. This clause, couched in legal terminology, was in a printed form in comparatively small print. Defendants, relying upon the representation of plaintiff's employee that they were signing a renewal of the old mortgage, did not read the new encumbrance and were therefore unaware that it was a trust deed containing the foregoing provision.

Defendant defaulted in the payment of the $3,000 promissory note, and plaintiff thereupon brought the present action, asking that the trust deed be foreclosed and the proceeds of the sale applied not only on the $3,000 obligation but also on the $7,850.70 still owed by defendants to plaintiff under the $32,750 note. The trustee under the deed of trust and Anna L. Earp, to whom the Washburns had subsequently conveyed the property, were joined as defendants. Defendants in answer alleged that plaintiff, through one of its agents, induced them to sign the deed of trust by representing it to them as an extension of the mortgage, and that in reliance upon this representation they signed the instrument, unaware that it was a deed of trust or that it purported to secure any indebtedness other than the $3,000 loan. They therefore asked that the deed of trust be declared void.

The trial court found that defendants did not intend to execute a trust deed or to give the property as security for any indebtedness other than the $3,000, and that they signed

the instrument without reading it in reliance upon the representation of plaintiff's employee. Judgment was entered foreclosing the deed of trust given to secure the $3,000 note. Plaintiff was awarded a personal judgment against Washburn for $7,850.70 with interest, but the court refused to decree that this indebtedness was secured by the deed of trust. Plaintiff has appealed on the ground that defendants' failure to read the instrument precludes them from setting up any misrepresentation of the contents as a defense.

It is established in California and a majority of other jurisdictions that a person who has been induced to enter into a contract by fraudulent misrepresentations as to its contents may rescind or reform the contract. (*California Trust Co.* v. *Cohn,* 214 Cal. 619 [7 Pac. (2d) 297]; *Fleury* v. *Ramacciotti,* 8 Cal. (2d) 660 [67 Pac. (2d) 339]; *Wenzel* v. *Schulz,* 78 Cal. 221 [20 Pac. 404]; *Johnson* v. *Sun Realty Co.,* 138 Cal. App. 296 [32 Pac. (2d) 393]; *Moore* v. *Copp,* 119 Cal. 429 [51 Pac. 630]. See cases cited in 1 Page, Contracts (2d. ed.) secs. 229, 230, 233; 9 Wigmore, Evidence (3d. ed.) sec. 2416. See *Glickman* v. *New York Life Insurance Co.,* 16 Cal. (2d) 626 [107 Pac. (2d) 252, 131 A. L. R. 1292]; *Seeger* v. *Odell,* 18 Cal. (2d) 409 [115 Pac. (2d) 977]; Cal. Civil Code, sec. 1689 (1).) His negligence in failing to read the contract does not bar his right to relief (*California Trust Co.* v. *Cohn, supra; Fleury* v. *Ramacciotti, supra; Wenzel* v. *Schulz, supra; Johnson* v. *Sun Realty Co., supra; Moore* v. *Copp, supra.* See cases cited 1 Page, Contracts (2d. ed.) secs. 229, 230, 233; 9 Wigmore, Evidence (3d. ed.) sec. 2416) if he was justified in relying upon the representations. (See *Seeger* v. *Odell, supra;* Rest., Torts, § 537, and cases cited in 12 Cal. Jur. 750 *et seq.*) Contributory negligence is no defense to an intentional wrong. (See *Seeger* v. *Odell, supra;* Prosser, Torts, 748, 402, and cases cited in 12 Cal. Jur. 758, 759.) In the cases of *Kimmell* v. *Skelly,* 130 Cal. 555 [62 Pac. 1067] and *Gridley* v. *Tilson,* 202 Cal. 748 [262 Pac. 322], relied upon by plaintiff, there were no fraudulent representations as to the contents of the contracts in question. In each case the defendant's misconception of the contract was attributable solely to his failure to read it.

In the present case there is sufficient evidence to support the finding of the trial court that the terms of the contract were fraudulently represented to defendants and that

they were justified in relying upon the representation. Defendants were not negotiating with plaintiff for the first time; they had in fact dealt with plaintiff for a period of ten years. Since they were already familiar with the terms of the old mortgage, they were justified in assuming that there was no necessity for reading the instrument that was represented to them as a renewal of that mortgage.

In refusing to hold the trust deed as security for the indebtedness of $7,850.70 the trial court in effect rescinded the trust deed to that extent. Defendants pleaded their right to rescission sufficiently when they alleged the misrepresentation and requested that the trust deed be declared void. Since defendants received nothing from plaintiff under the rescinded provision that they can restore, they are under no duty to make restitution. (See cases cited in 6 Cal. Jur. 387; 4 Cal. Jur. Ten-year Supp. 135.) Plaintiff has already received compensation for the extension of the indebtedness in the form of interest payments that continued until 1939, and plaintiff has a judgment in its favor for the unpaid principal, interest, and expenses, with a decree of foreclosure on the property for this amount.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Houser, J., and Carter, J., concurred.